

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHARLES MCKINLEY,<br><br>Plaintiff,<br><br>v.<br><br>PETsMART, Inc. and KELLY WATSON<br><br>Defendants. | CIVIL ACTION NO. |

*AFFIDAVIT OF A. R. TULANI GRUNDY*

Pursuant to 28 U.S.C. § 1746, A. R. Tulani Grundy states as follows:

1. My name is A. R. Tulani Grundy. I am over eighteen (18) years of age, have a sound mind, and suffer from no disabilities that would prevent me from giving this Affidavit. I have personal knowledge of the facts and information contained in this Affidavit. I give this Affidavit for use in the above-styled legal proceeding.

2. I am an attorney with Littler Mendelson P.C. located at 3348 Peachtree Road, NE, Suite 1100, Atlanta, Georgia 30326.

3. On June 1, 2005, I pulled the following cases from the LexisNexis Total Research System: *Marshall v. Jubilee Bonding Co.* (Published in June 2002); *Hudson v. Parkway Storage, L.L.C.* (Published in July 2004). This additional subscription research service reports from court dockets jury verdicts and damages which have been awarded in legal proceedings. The two other cases documented were obtained from the Westlaw legal research database and are cited accordingly.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of June, 2005

A. R. Tulani Grundy

Firmwide:80094533.1 037653.1061

Copyright 2002 Florida Legal Periodicals, Inc.
ALABAMA CIVIL TRIAL REPORTER

CAROLYN MARSHALL, individually and as mother and next friend of JAMONICA MARSHALL, a minor vs. JUBILEE BONDING CO.

Docket No.: CV-00-0546; ACTR Reference No. 02:06-24

Verdict Date: March 21, 2002; Publication Date: June 2002

**TOPIC:** Assault & Battery - **False Imprisonment**

**RESULT:** $ 195,000 for Plaintiffs. (verdict)

($ 80,000 for Jamonica: $ 5,000 - compensatory damages; $ 75,000 - punitive damages; $ 115,000 for Carolyn: $ 15,000 - compensatory damages; $ 100,000 - punitive damages).

**STATE:** Alabama

**COUNTY:** Mobile

**JUDGE:** John R. Lockett

**PLAINTIFF PROFILE:** Carolyn
    Age: 43
    Sex: Female
    Occupation: Day Care Worker

    Jamonica
    Age: 16
    Sex: Female

**PLAINTIFF ATTORNEY:** Gary W. Fillingim and Melissa Thomas of Burns, Cunningham, Mackey & Fillingim, Mobile

**DEFENDANT ATTORNEY:** Robert E. McDonald, Jr., Mobile

CAUSE OF INJURY: Plaintiff Carolyn resided in Mobile with Plaintiff Jamonica and her twenty-year-old son, James Marshall. James had been arrested by the Mobile Police Department on a misdemeanor charge of driving with a suspended driver's license, and Plaintiff Carolyn, through Defendant, posted a fifty dollar bond for his release. On October 14, 1999, James was supposed to appear in Municipal Court, but was working out of town and failed to appear. Plaintiff Carolyn telephoned Municipal Court and informed the court that James was out of town and that they needed a new trial date. The court agreed to reset the case. That evening, when Plaintiff Carolyn returned home at 6:30 p.m., Plaintiff Jamonica informed her that James had stopped by the house and then left. Plaintiff Jamonica also informed her mother that representatives of Defendant came to the house and went inside looking for James. When the representatives were unable to locate James, they threatened to confine Plaintiff Jamonica in the youth center if she did not tell them where they could find James. Plaintiff Jamonica alleged that she repeatedly told Jubilee's representatives that she did not know where James was. The representatives left the house. Upon hearing this information, Plaintiff Carolyn telephoned Defendant and spoke with a representative. Plaintiff Carolyn advised the representative that she did not know where James was and the representative promised her that they would not return to her home. However, later that same evening as Plaintiff Carolyn was preparing to leave her home, someone knocked at the front door. When Plaintiff Carolyn opened the door, a representative of Defendant was there and demanded to know where James was. Again Plaintiff Carolyn advised the representative that she did not know where James was. The representative told Plaintiff Carolyn that he would arrest her if she did not tell him where James was. At that moment, there was a knock at Plaintiff Carolyn's back door. A female representative of Defendant grabbed Plaintiff Carolyn by the back of the neck and slung her out the back door and up against James' car which was parked in the driveway.

The two representatives placed hand cuffs on Plaintiff Carolyn's left wrist and pulled her arm back even though she had informed them that she had recently undergone surgery. The male representative shoved Plaintiff Jamonica in the chest slamming her against an oak tree and told her to shut up or that he would take her to the youth center. A third representative of Defendant appeared and pulled out a gun, fired several shots, and told Plaintiff Carolyn that he would blow her brains out if she did not shut up. Shortly thereafter, Mobile Police officers arrived at Plaintiffs' residence, and Defendant Jubilee's representatives left the scene. Defendant denied liability and claimed that the representatives were bounty hunters and employed as independent contractors.

NATURE OF INJURY: Extreme emotional distress.

Source: Command Searching > Alabama Jury Verdicts and Settlements
Terms: **false imprisonment** (Edit Search)
View: Full
Date/Time: Wednesday, June 1, 2005 - 4:45 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Copyright 2004 Florida Legal Periodicals, Inc.
ALABAMA CIVIL TRIAL REPORTER

WANDA HUDSON vs. PARKWAY STORAGE, L.L.C. and JIM ABERDEEN

Docket No.: CV-02-2262; ACTR Reference No. 04:07-37

Verdict Date: September 29, 2003; Publication Date: July 2004

**TOPIC: False Imprisonment** - Storage Facility

**RESULT:** $ 100,000 for Plaintiff. (verdict)

**STATE:** Alabama

**COUNTY:** Mobile

**JUDGE:** Roderick P. Stout

**PLAINTIFF PROFILE:** Age: 42
Sex: Female
Occupation: Self-employed Computer Operator

**PLAINTIFF ATTORNEY:** M. Mallory Mantiply, Mobile

**DEFENDANT ATTORNEY:** Bert Taylor and Peter deSarro of Taylor & Smith, P.C., Orange Beach

CAUSE OF INJURY: Defendant Aberdeen is the manager of Defendant Parkway Storage located on Dauphin Island Parkway in Mobile. On November 1, 2001, Plaintiff alleged that she was accidentally locked inside a storage unit at Parkway Storage for sixty-three days. Plaintiff claimed Defendants were responsible for the incident and sought compensatory and punitive damages. Defendants denied liability and maintained that Plaintiff had been evicted from her home and was sleeping in the unit.

NATURE OF INJURY: Physical pain and suffering; physical affects of malnutrition; mental anguish; physical and psychological injuries.

**PLAINTIFF EXPERT WITNESSES:** W. Michael Asher, M.D., Radiology, Mobile

EDITOR'S NOTE: The verdict has been paid and satisfied. Defendants served an Offer of Judgment to Plaintiff in the amount of $ 250, which was rejected. Plaintiff asked the jury for $ 10,000,000 in closing. Defendants moved for a Judgment as a Matter of Law, which the Court granted, as to the **false imprisonment** and wantonness claims, but denied as to negligence. In Defendants' Renewed Motion for Judgment as a Matter of Law, Defendants argued that the Court erred in not allowing Defendants: (1) to put forth evidence related to probate hearings involving Plaintiff on October 31, 2001, in which DHR brought a petition for involuntary commitment against Plaintiff; (2) to use the word "homeless" during the trial, as the status of Plaintiff's homelessness was material and directly related to Defendants' affirmative defenses and to Plaintiff's actions leading her to become locked in the self-storage unit; and (3) to mention Plaintiff's mental illness which was well-documented in her medical records. In Plaintiff's Response to Defendants' Post-Trial Motion for Judgment, Plaintiff argued that it was undisputed that Aberdeen locked Plaintiff inside the storage unit and that Aberdeen testified it would be both "reasonable" and "prudent" to check to see if someone was inside before locking the door, which he failed to do on that occasion. Additionally, Plaintiff argued that Defendants' counsel did manage to inject both "homelessness" and "mental illness" into the trial despite the Court's ruling on Plaintiff's Motion in Limine and, in any event, the verdict was not affected.

DEFENDANT'S ATTORNEY'S COMMENTS: Bert Taylor: Defendant's post-trial motion cited the undisputed fact that the unlocked door would not open when Aberdeen tried to open it before placing the lock on the door. Therefore, there was no negligence to support the verdict.

**Westlaw.**

2001 WL 34146624                                                          Page 1
2001 WL 34146624 (Ala.Cir.Ct.)
(Cite as: 2001 WL 34146624 (Ala.Cir.Ct.))

Copyright (c) 2005 Alabama Jury Verdict Reporter. All rights reserved.

Circuit Court of Alabama, First Judicial Circuit, Clarke County.
DAUGHERTY V. LIBERTY MUTUAL LIFE INS. CO.
96-0055

DATE OF VERDICT/SETTLEMENT: August 17, 2001

**TOPIC: DEFAMATION - WHEN A LIFE INSURANCE AGENT STRUCK OUT ON HIS OWN, HIS FORMER AGENCY ADVISED HIS CUSTOMERS HE WAS A CROOK**

SUMMARY:
  Verdict: $300,000 for plaintiff

ATTORNEYS:
  Plaintiff: Joseph C. McCorquodale, III, *McCorquodale & McCorquodale*, Jackson and Wyman O. Gilmore, *Gilmore Law Office*, Grove Hill
  Defendant: D. Brent Baker, *Frazer Greene Upchurch & Baker*, Mobile, Thomas H. Figures, Mobile and Wallace H. Lindsey, III, Butler for Liberty Mutual Life

JUDGE: Harold L. Crow

RANGE AMOUNT: $300,000
STATE: Alabama

COUNTY: Clarke

FACTS:
  Ronnie E. Keahey, Grove Hill for Hartley

  From 1981 to 1993, Dean Daugherty, age 59, was a life insurance salesman for Liberty Mutual Life Insurance. Working out of Jackson, he was managed by the district office in Mobile. For many years, Daugherty was a top seller. In September of 1993, he resigned from Liberty and struck out on his own, starting his own agency.

  Thereafter, he began to convert old Liberty customers, essentially stealing the business and the policies. When word got back to Mobile and the home office in Birmingham, management was not happy about the development. It sent a sales manager, Perry Hartley, to the area, to contact every one of the converted customers.

  Hartley did just that, making a pitch to restore the Liberty business, just as he was instructed to do. It wasn't long before Daugherty caught wind of that effort, particularly in that his customers were calling him to report something troubling about remarks Hartley had made.

  Particularly and on several occasions to the customers, Hartley advised that, (1) Daugherty sold worthless cancer policies to patients who already had cancer, (2) he had been the sorriest agent in Liberty's group, (3) he was fired because of it, and (4) having sold the worthless policies, Daugherty then pocketed the premiums. All of this, Daugherty postured, was untrue and he'd been defamed by the remarks.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In this action, he sued Liberty and Hartley, individually, seeking damages for the purported defamation. It relied on the testimony of the customers with whom Hartley had spoken, and internal memorandums from Birmingham directing Hartley to regain the business. Plaintiff developed, as a result of the false remarks, his income dropped in half. He sought compensatory and punitive damages at trial.

Hartley defended the case and denied making the defaming remarks as described above; he suggested, the policy holders who had so testified were lying. Instead, he pointed out, that it might not have been good to convert the policies, and that in doing so, Daugherty had not complied with state insurance regulations. As well, while he was attempting to restore the business Daugherty had taken, nothing was done wrong in the process. Plaintiff's damages were also diminished, defendants noting that even by his own testimony, he still enjoyed a good reputation.

This defamation case was tried before a Grove Hill jury. It returned a verdict, deliberating an hour, for Daugherty against both defendants, awarding compensatory damages of $300,000. It rejected the imposition of punitives. A consistent judgment has been entered for plaintiff and pending is Liberty's motion for the new trial, calling the damages excessive and a result of improper argument by counsel.

Alabama Jury Verdict Reporter

Circuit

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

2001 WL 34146570                                                                   Page 1
2001 WL 34146570 (Ala.Cir.Ct.)
(Cite as: 2001 WL 34146570 (Ala.Cir.Ct.))


Copyright (c) 2005 Alabama Jury Verdict Reporter. All rights reserved.

Circuit Court of Alabama, Eighth Judicial Circuit, Morgan County.
PEETE V. THE BANK
00-0804

DATE OF VERDICT/SETTLEMENT: November 16, 2001

**TOPIC: TORTIOUS INTERFERENCE WITH A CONTRACT - ACCOUNTANT SUED NOT JUST ANY FINANCIAL INSTITUTION, BUT *THE BANK*, ALLEGING IT HAD IMPROPERLY INTERFERED WITH HIS LOAN ARRANGEMENT WITH A CAR DEALER; AT THE TIME, THE CAR DEALER OWED THE BANK OVER $7,000,000, RELATED TO A JUST DISCOVERED CHECK -KITING SCHEME**

SUMMARY:
   Verdict: $633,900 for plaintiff; $105,060 for defendant on counterclaim

ATTORNEYS:
   Plaintiff: Dennis E. Goldasich, Jr., *Marsh Rickard & Bryan*, Birmingham and Erby J. Fisher, *Cross Poole & Fisher*, Tuscaloosa
   Defendant: Stephen L. Poer, Georgia Sullivan Roberson & James A. Patton, Jr., *Haskell Slaughter Young & Rediker*, Birmingham

JUDGE: Glenn E. Thompson

RANGE AMOUNT: $633,900
STATE: Alabama

COUNTY: Morgan

FACTS:
   This case started with a plan that was hatched by several used-car dealers in the Decatur area. Each would pass worthless checks from various local banks, then passing another check to cover the first check. Soon checks were flying all over town, totaling $175,000,000. Before long, the check-kiting scheme was discovered and the car dealers had problems.

   First on the list was Greg Steenson, of Steenson Auto Sales (SAS). He owed a bank, known as The Bank, over $7,000,000, related to his check-kiting conduct. To Birmingham to meet with The Bank bigwigs, attorneys in tow, Steenson agreed to transfer all assets of SAS to The Bank, in the hopes of avoiding criminal prosecution. Those hopes failed.

   In this stock and asset transfer, The Bank neglected just one thing. It seems that plaintiff, Preston Peete, a local accountant, had just loaned Steenson $241,000. Unaware of the check-kiting scheme, Peete believed his rights had been run over by the Bank, which denied his claim on the loan. He described his dire straits, caught in the crossfire between The Bank and Steenson, forced to borrow from his in-laws and buy groceries with his credit card.

   In this lawsuit, Peete sued Steenson, SAS and the Bank. Steenson did not answer and a default was entered against him. SAS is in bankruptcy, but did defend; a holding of The Bank, both were represented by the same counsel at trial. It was

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2001 WL 34146570                                                          Page 2
2001 WL 34146570 (Ala.Cir.Ct.)
(Cite as: 2001 WL 34146570 (Ala.Cir.Ct.))

plaintiff's contention that The Bank had among other things, tortiously interfered with his contract with Steenson.

The instructions required Peete to prove there was a valid contract with SAS, that The Bank knew of it, and that there was no justification. Peete's claimed compensatory damages were some $270,000 including interest. He also sought the imposition of punitives. The count against SAS was for breach of contract.

However, at this eleven day trial, Peete's focus was on The Bank, describing it as a big corporation that used strong-arm tactics in attempts to collect its debt. In developing that picture, Peete noted how it treated its then branch manager in Decatur. When manager denied knowledge of the scheme, The Bank offered him a $5,000 a month consultant job to *cooperate*. He didn't cooperate and on its loss statements to the insurer, The Bank still fingered the former manager.

The Bank's defenses to the case were legion. They started with the initial loan, which it argued was personal to Steenson in any event and unrelated to SAS. Then to the alleged interference, it portrayed itself as a victim of fraud, then acting reasonably to collect a debt. The Bank denied any knowledge of Peete's loan agreement. Permeating defendant's case was the silent suggestion that Peete knew of the check-kiting scheme and made the loan in hopes of a quick return. Peete denied this.

This case was deliberated over two days, the jury returning a verdict against all defendants. To damages against Steenson, who while not participating, he had appeared pursuant to a subpoena, Peete took $211,300. The award was the same against SAS, the panel rejecting punitives against these defendants.

To The Bank, Peete again took $211,300 in compensatory damages on the tortious interference count. This panel further elected to impose punitives against The Bank in the sum of $422,600, exactly double the compensatory damages. The verdict against The Bank totaled $633,900.

At the post-trial level, the maintenance of the court record broke down. While the court signed judgments the next day, 11-16-01, they were not entered in the record until the following *May*. This was also true of the other trial documents.

In that six-month interim, The Bank made several motions, including for a new trial, citing juror misconduct and other trial errors. The judge never ruled on the motions or conducted a hearing and it was silently denied by the 90- day rule. Interestingly, none of The Bank's motions are in the court record and the clerk was unaware of their location. Its motion tacitly denied, The Bank has since appealed, filing a supersedeas bond. It has requested a transfer to the Supreme Court, skipping the Civil Court of Appeals, citing as grounds, the large verdict and the novel issue it framed, Can legitimate efforts to collect a debt be considered tortious interference with a contract?

Alabama Jury Verdict Reporter

Circuit

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.