## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **CHARLES McKINLEY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PETSMART, INC., and AL WILLIAMS,**<br><br>**Defendants.** | **CIVIL ACTION NO. 2:05-CV-562-F** |

### *DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT*

Defendants PetSmart, Inc. and Al Williams (collectively "Defendants") hereby submit their Separate Statement of Undisputed Material Facts in Support of Motion for Summary Judgment. The affidavits, deposition excerpts, and exhibits relied upon by Defendants and referenced herein are included in the contemporaneously filed Appendix In Support of Defendants Motion For Summary Judgment.[1]

---

[1] References to deposition testimony are designated by name (*e.g.*, "Plaintiff's Dep., p.____, ll.____."). References to affidavits are designated by affiant's name (*e.g.*, "Williams Aff. ¶___.").

I. *Plaintiff Worked for PetSmart as a Presentation Manager.*

1. During the relevant time period, Plaintiff was employed on an at-will employment basis as a Presentation Manager at PetSmart's East Chase Plaza location in Montgomery, Alabama. (Plaintiff's Dep., p. 70, ll. 11; *Id.* Exhs. 8, 10.)

2. PetSmart has adopted an official Off-Hours Access Control Policy and Procedure ("Off-Hours Policy") which provides in relevant part:

> During non-business hours the store is required to be secure and access to the store controlled….During non-business hours there must be at least two individuals in the store at any given time. *Id*. Exh. 6.

3. During his employment, Plaintiff was aware of the Off-Hours Policy. (*Id.* p. 55, ll. 21- p. 57, ll. 25; p. 58, ll. 1-15; p. 61, ll. 21-p. 62, ll. 9).

4. Williams terminated Plaintiff for violating the Off-Hours Policy. (*Id.* p. 103, ll. 4-5; Williams Aff. ¶ 7; Watson Aff. ¶ 8).

II. *Plaintiff Violated Off-Hours Policy.*

5. On the evening of August 10, 2004, PetSmart employee Kristi Hill witnessed Plaintiff leaving the store alone during non-business hours carrying a large bag of store merchandise. (Hill Aff. ¶ 3.)

6.  The security report for August 10 shows that Christi Sullivan closed the store at 10:26 p.m.; but that McKinley entered the store at 10:37 p.m. and left at 10:47 p.m. (Watson Aff. ¶ 4; Plaintiff's Dep. Exh. 7, p. 5.)

7.  Plaintiff admits that he was never authorized to enter the store by himself. (*Id.* p. 64, ll. 7-9).

8.  After seeing Plaintiff leave the store alone at 10:47 p.m., Hill notified Kelly Watson, Store Manager, of Plaintiff's violation of the Off-Hours Policy and possible theft. (Hill Aff. ¶ ¶ 4-5.)  Watson informed Al Williams, District Manager, of the matter. (Williams Aff. ¶ 3; Watson Aff. ¶ 5.)

9.  Watson acquired computer printouts of store access from the security alarm company. (Watson Aff. ¶ 4, Plaintiff's Dep. Exh. 7, p. 5.)

10.  Watson sent the computer printout to Williams and the two managers agree to interview Plaintiff on August 13, 2004. (Watson Aff. ¶ 6.)

III.  *McKinley was Not Detained Against His Will By Direct Restraint or Force.*

11.  On August 13, 2004, Williams visited the PetSmart store on routine business. (Plaintiff's Dep., p. 73, ll. 5-p. 74, ll. 10.) Williams met Plaintiff in the store and requested that Plaintiff come to the manager's office in the front of the store. (*Id.* p. 85, ll. 25-p. 86, ll. 2).

3

12.     Upon Williams' request, Plaintiff went to the store office to meet Williams and Watson. (*Id*. p. 89, ll. 3-4; p. 90, ll. 1-5; Plaintiff's Exh. 2, 3).

13.     The store office had one door with a window. (*Id*. p. 87, ll. 4-25; p. 88, ll. 1-13).

14.     Williams closed the door. (*Id*. p. 91, ll. 2-3).

15.     Plaintiff is physically larger than both Williams and Watson. (*Id*. p. 139, ll. 2-5). Williams is approximately 6'0 feet tall and 170 to 180 pounds. (*Id*. p. 68, ll. 18-24). Watson is approximately 5'5 feet tall and 150 to 170 pounds. (*Id*. p. 67, ll. 11-16). Plaintiff is 315 pounds and a former high school strong tackle. (*Id*. p. 69, ll. 2-4; p. 40, ll. 6-8).

16.     Plaintiff sat closest to the door and no one sat or stood in between him and the door. (*Id*. p. 88, ll. 14-p. 89, ll. 25; p. 90, ll. 14-20; *Id.* Exh. 3).

17.     Plaintiff admits that the office doors were not locked. (*Id*. p. 138, ll. 3-6).

18.     After a moment of casual conversation, Williams asked Plaintiff if he had ever been in the store after hours. (*Id*. p. 92, ll. 1-5; p. 93, ll. 16-24). Plaintiff told Williams that he had been in the store after hours approximately "five or six times, maybe more, maybe less." *Id.* p. 94, ll. 3-20.

19.   Williams then asked Plaintiff if he had ever taken merchandise out of the store.  (*Id.* p. 96, ll. 20-25).

20.   In response to being asked "Have you ever taken merchandise out of the store, i.e. dog food," Plaintiff replied, "No, I've never stolen any merchandise out of the store."  (*Id.* p. 96, ll. 20-25).

21.   Plaintiff asked to use the telephone to call his lawyer.  (*Id.* p. 99, ll. 23-24; p. 100, ll. 3-4).  According to Plaintiff, nobody denied him the ability to call his attorney and this was the first time he tried to use the telephone.  (*Id.* p. 105, ll. 1-5).  Plaintiff states that when he picked up the telephone, "they [Williams and Watson] just sat there and looked at me."  (*Id.* p. 106, ll. 19-20).  The only thing Williams said was that there was no need to get anyone else involved.  (*Id.* p. 100, ll. 6-7).

22.   Plaintiff testified that he was "fumbling with my cell phone the whole time in my hand."  (*Id.* p. 105, ll. 20-p. 106, ll. 1).

23.   Williams asked Plaintiff to sign a statement admitting to his wrongdoing.  (*Id.* p. 100, ll. 11-15).

24.   At some point during the interview, Plaintiff voluntarily started writing a statement admitting that he violated the Off-Hours Policy, "I Charles

5

McKinley admit to coming to the building after hours." (*Id*. p. 112, ll. 17-p. 113, ll. 3; *Id*. Exh. 1).

25. Plaintiff says that, "[A]bout the time I was getting ready to call my lawyer, and I wanted to leave, because I was getting ready to just walk out of the door." Williams stated, "If you leave, you're going to be arrested." (*Id.*, p. 114, ll. 4-11).

26. Plaintiff admits that Williams did not tell him that he could not leave the office. (*Id*. p. 104, ll. 11-20).

27. At this time, Plaintiff told Williams that he was calling his attorney and began to use the office telephone to call his attorney. (*Id.* p. 104, ll. 25-p. 105, ll. 1-3). Plaintiff admits that Williams and Watson did not prevent him from using the phone. (*Id.* p. 106, ll. 16-20).

28. In search of the telephone number for his attorney, Plaintiff made three telephone calls to (1) his ex-girlfriend's father Gene Randolph (*Id*. p. 107, ll. 12-14); (2) his ex-girlfriend's mother Catherine Randolph (*Id.* p. 108, ll. 17-20); and (3) his ex-girlfriend's sister-in-law Lisa Randolph (*Id.* p. 109, ll. 14-15.) Plaintiff did not ask Williams or Watson to leave the office while he was on the telephone on any of these three calls. (*Id.* p. 106, ll. 16-23).

6

29. On the fourth call involving Plaintiff, Eugene Randolph called Plaintiff back on Plaintiff's cell phone and instructed Plaintiff that he would contact an attorney for Plaintiff. (*Id*. p. 110, ll. 5-25).

30. Approximately, fifteen minutes later, Eugene Randolph arrived at the store with Cathy and Lisa, and Plaintiff says that Eugene Randolph "pushes the door open" to the office where the interview was being conducted. (*Id*. p. 116, ll. 13-15; p. 117, 1- p. 118, ll. 25).

31. Randolph asked Plaintiff, "Did you ever steal any dog food out of he store?" (*Id*. p. 121, ll. 20-21). Plaintiff responded that he had never stolen any merchandise "to his knowledge." (*Id*. p. 122, ll. 3-5). Randolph became mad with Plaintiff's equivocal response and said, "What is to my knowledge mean, either you did or you didn't," and Plaintiff said "no, I didn't." (*Id*. p. 122, ll. 6-12).

32. During this time, the attorney called Randolph's cell phone. (*Id.* p. 125, ll. 8-15). Plaintiff spoke with his attorney. (*Id*. p. 125, ll. 14-25; p. 126, ll. 2-5).

33. While on the telephone with his attorney, Plaintiff decided to leave the office. (*Id*. p. 126, ll. 21-25; p. 127, ll. 1-25). Plaintiff walked out of the office where Williams, Watson, and Randolph remained and into another store office. (*Id*. p. 127, ll. 1-25; *Id*. Exh. 2).

34. Plaintiff admits this was the first time he tried to walk out of the office. (*Id.* p. 138, ll. 17-20).

35. Williams and Watson did not use any force to prevent Plaintiff from leaving the office and Plaintiff did not have to "fight his way out." (*Id.* p. 142, ll. 1-20; Williams Aff. ¶ 8; Watson Aff. ¶ 9; Plaintiff's Dep. Exh. 2).

36. After Plaintiff's telephone conversation ended, Williams was talking on his phone outside of the office where the interview was being conducted. (*Id.* p. 131, ll. 20-24).

37. Plaintiff walked out of the store. (*Id.* p. 133, ll. 13-14). He did not ask for permission. (*Id.* p. 143, ll. 3-7).

38. Plaintiff admits that Williams and Watson did not do anything differently when he decided to leave the store than what they were doing during his interview. (*Id.* p. 143, ll. 8-12).

39. Plaintiff estimates that the interview lasted for approximately one hour and thirty minutes. (*Id.* p. 143, ll. 21-25).

40. Plaintiff admits that neither Williams nor Watson ever locked the door, hit him or physically coerced him, threatened to hit him or hurt him, or threatened physical violence, and that the only time that he stood up and tried to walk out of the office is when he did leave the office (*Id.* p. 138, ll. 3-23).

41.     Williams terminated Plaintiff for violating the Off-Hours Policy. (*Id.* p. 103, ll. 4-5; Williams Aff. ¶ 7; Watson Aff. ¶ 8).

IV.     *Defendant's Did Not Defame Plaintiff.*

42.     Plaintiff alleges that subsequent to his termination Defendants defamed him by telling non-management employees about the circumstances surrounding his interview. (Plaintiff's Amended Complaint, ¶ 10.)

43.     On one occasion, Plaintiff visited the PetSmart store to take his dog to the veterinarian. (Plaintiff's Dep., p. 147, ll. 16-25.) He alleges two or three employees asked him if he was fired for stealing dog food. (*Id.* p. 147, ll. 23-p. 148, ll. 1; p. 151, ll. 22-p. 152, ll. 25). Plaintiff does not recall the names of these employees. (*Id.* p. 152, ll. 1-25).

44.     These employees did not tell Plaintiff where they had heard the rumor. (*Id.* p. 152, ll. 14-16).

45.     These employees were groomers. (*Id.* p. 153, ll. 4-6).

46.     On another occasion, while at the mall Plaintiff alleges that a former PetSmart co-worker asked him if he was fired for stealing dog food. (*Id.* p. 148, ll. 7-9). Plaintiff only recalls the first name of this former co-worker. (*Id.* p. 153, ll. 12). This employee did not tell Plaintiff where she had heard the rumor. (*Id.* p. 153, ll. 24-p. 154, l. 1).

9

47. As to both rumors, Plaintiff admits that he has no evidence that Williams or Watson made the alleged statements. (*Id*. p. 154, ll. 2-9).

48. Williams and Watson did not discuss Plaintiff's termination or the circumstances surrounding the August 13 interview with any non-management employees. (Williams Aff. ¶ 12; Watson Aff. ¶ 13.)

V.   *Defendants Did Not Tortiously Interfered with Plaintiff's Employment.*

49. Plaintiff alleges that Defendants tortiously interfered with his employment by giving "bad" references to prospective employers. (Plaintiff's Amended Complaint ¶ 12; Plaintiff's Dep., p. 29, ll. 23-p. 37, ll. 6; p. 158, ll. 5-27.)

50. Specifically, Plaintiff alleges he was not offered employment by Petco because of a "bad" reference from Defendants. (*Id.* p. 34, ll. 9-34).

51. Plaintiff interviewed for a job with Petco the day after his termination from PetSmart. (*Id.,* p. 30, ll. 3-4).

52. Plaintiff interviewed with the Petco District Manager and was told that he had to contact Plaintiff's past employers. (*Id.* p. 32, ll. 2-6).

53. Plaintiff heard from his friend, a Petco Store Manager, that the District Manager had told this Store Manager that he was going to "pass on you." (*Id*. p. 160, ll. 4-22.)

10

54. Plaintiff never talked to the District Manager. (*Id*. p. 33, ll. 12-14). Plaintiff has no knowledge that the District Manager called PetSmart. (*Id.* p. 33, ll. 15-20).

55. When asked if Plaintiff knows if Williams or Watson ever made a reference on his behalf Plaintiff admits that he does not know if Williams or Watson ever provided a reference. (*Id*. p. 159, ll. 23-p. 160 l. 22).

56. No prospective employer informed Plaintiff that they received a "bad" reference from anyone at PetSmart. (*Id.* p. 35, ll. 4-25; p. 160, 1-7).

57. Plaintiff also admits that prospective employers may have received "bad" references from a previous ambulance employer rather than PetSmart. (*Id.* p. 160, ll. 23-p. 161, l. 1).

Respectfully submitted this 18th day of April 2006.

                                **s/ Donald W. Benson, Esq.**
Donald W. Benson
*Pro Hac Vice*
Georgia Bar No. 052350
A. R. Tulani Grundy
*Pro Hac Vice*
Georgia Bar No. 141522
Charlotte K. McClusky
Alabama Bar No. 5296A57M
Attorneys for Defendants
LITTLER MENDELSON, PC
3348 Peachtree Road, NE, Suite 1100
Atlanta, GA  30326-1008
Telephone:  (404) 233-0330
Email: dbenson@littler.com
Email: tgrundy@littler.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **CHARLES MCKINLEY,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**PETSMART, INC., and AL WILLIAMS,**<br><br>    **Defendants.** | **CIVIL ACTION NO. 2:05-CV-562-F** |

*CERTIFICATE OF SERVICE*

It is hereby certified that on April 18, 2006, I electronically filed the foregoing ***Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment*** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorney of record: Deborah Q. Harding.

**s/ Donald W. Benson, Esq.**
*Pro Hac Vice*
Georgia Bar No. 052350
Attorney for Defendants

LITTLER MENDELSON, PC
3348 Peachtree Road, NE, Ste. 1100
Atlanta, Georgia 30326-1008
Telephone: (404) 233-0330
Facsimile: (404) 233-2361
E-mail: dbenson@littler.com