## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

**CHARLES MCKINLEY,**

    **Plaintiff,**

**v.**

**PETSMART, INC., and AL WILLIAMS,**

    **Defendants.**

**CIVIL ACTION NO. 2:05-CV-562-F**

---

## DEFENDANTS' MEMORANDUM of LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

---

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF CONTENTS ...................................................................... i

TABLE OF AUTHORITIES ............................................................. iii

I.    INTRODUCTION ................................................................. 1

II.   SUMMARY OF FACTS ......................................................... 2

    A.    *Plaintiff Worked for PetSmart as a Presentation Manager Manager.* ....................................................................... 2

    B.    *Plaintiff Violated Off-Hours Policy.* ................................. 3

    C.    *Plaintiff Was Not Detained Against His Will By Direct Restraint or Force.* ........................................................ 4

    D.    *There is No Evidence of Any Defamatory Comment.* ......... 9

    E.    *There is No Evidence that Defendants. Tortiously Interfered With Plaintiff's Employment.* ........................................ 11

III.  ARGUMENT AND CITATION OF AUTHORITY ............... 12

    A.    *Summary Judgment Standard.* ...................................... 12

    B.    *Plaintiff's Claim Of False Imprisonment Fails Because He Was Not Detained Against His Will By Direct Restraint or Force.* .............................. 13

    C.    *PetSmart and Williams Never Defamed Plaintiff.* .......... 17

        1.    Plaintiff Presents No Evidence of a False or Defamatory Statement. .................................... 17

D. *Plaintiff Presents No Evidence That Defendants Tortiously Interfered With His Prospective Employment*................................ 20

    1. Plaintiff Fails to Prove the Existence of a Contract or Business Relation. ......................... 21

    2. Plaintiff Fails to Prove Defendants' Knowledge of the Contract or Business Relation................................................. 21

    3. Plaintiff Fails to Prove Both Absence of Justification and Intentional Interference By Defendants .................................... 23

    4. Plaintiff Fails to Prove Damage as a Result of Defendants' Interference..................... 23

    5. Plaintiff Fails To Prove That Williams Or Watson Acted Outside The Scope Of Their Employment And With Malice. ................................ 24

IV. CONCLUSION........................................................................ 24

# TABLE OF AUTHORITIES

<u>**CASES**</u>                                                            <u>**PAGE**</u>

*Anderson v. Liberty Lobby, Inc.,*
 *477 U.S. 242, 248 (1986)* ..............................................................13

*Brown v. Infirmary Home Health Agency,*
 1998 U.S. Dist. LEXIS 5326 ..........................................................20

*Celotex Corp. v. Catrett,*
 *477 U.S. 317, 322 (1986)* ........................................................12, 13

*Chalal v. Northwest Medical Center, Inc.,*
 *147 F.Supp. 2d 1160, 1177 (N.D. Al. 2000)* .................................20

*Crown Central Petroleum Corp. v. Williams,*
 679 So.2d 651, 654 (Ala. 1996) ....................................................16

*Digitel Corporation v. Deltacom, Inc.,*
953 F.Supp. 1486 (M.D. Al. 1996)....................................................24

*Drill Parts and Service Co. v. Joy Mfg.,*
 619 So.2d 1280, 1289 (Ala. 1993) .................................................17

*Pouncy v. Vulcan Materials Co.,*
 920 F.Supp 1566 (N.D. Al. 1996) ..................................................24

*Sanders v. Show Shoe,*
 778 So.2d 820, 823 (AL. App. 2000) ........................................14, 16

*Teitel v. Wal-Mart,*
 287 F.Supp. 2d 1268, 1282 (M.D. Al. 2003) .................................21

*Watson v. McCrae*,
    2001 U.S. Dist. LEXIS 7257, ** 49 ............................................................19

*Williams v. Wal-Mart Stores,*
    200 U.S. Dist. LEXIS 14956, *9 .....................................................13, 15, 20

## **<u>STATUTES</u>**

Ala. Code § 6-5-170............................................................................................13

Come now Defendants PetSmart, Inc. and Al Williams (collectively "Defendants") in the above captioned matter, and file this Memorandum of Law In Support of Motion for Summary Judgment on the basis that there is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law. Plaintiff's claim of false imprisonment fails because he was not detained against his will by direct restraint or force. Plaintiff's claim for defamation of character fails because he has not presented evidence of a publication of any defamatory statement by management level employees. Plaintiff's claim for tortious interference with employment fails because Plaintiff has not presented any evidence that Defendants provided any "bad" references to prospective employers.

## I.    INTRODUCTION

Defendant PetSmart, Inc. takes specific measures to ensure the safety and security of its employees and store merchandise. To that end, the Company has adopted an Off-Hours Policy which requires that, during non-business hours, there must be at least two individuals in the store at any given time.[1]  On August 10, 2004, a PetSmart employee witnessed what she believed to be a violation of the Off-Hours Policy and evidence of a possible theft of store merchandise by Plaintiff

---

[1] Plaintiff's Dep. Ex. 6.

Charles McKinley ("McKinley" or "Plaintiff").[2]  The matter was reported to the

Store Manager and District Manager.[3]  On August 13, 2004, the store management

conducted an interview with Plaintiff.[4]  During this meeting, Plaintiff admitted to

violating the Off-Hours Policy and was terminated for violating this policy.[5]

## II.    SUMMARY OF FACTS[6]

    A.    _Plaintiff Worked for PetSmart as a Presentation Manager._

During the relevant time period, Plaintiff was employed on an at-will

employment basis as a Presentation Manager at PetSmart's  East Chase Plaza

location in Montgomery, Alabama.[7]  PetSmart has adopted Off-Hours Access

Control Policy and Procedures ("Off-Hours Policy") which provides in relevant

part:

> During non-business hours the store is required to be
> secure and access to the store controlled….During
> non-business hours there must be at least two
> individuals in the store at any given time.[8]

---

[2] _See_ Hill Aff. ¶ 3.
[3] _See_ Hill Aff. ¶ ¶ 4-5; Williams Aff. ¶ 3; Watson Aff. ¶ 6.
[4] Plaintiff's Dep., p. 85, ll. 25-p. 86, ll. 2.
[5] _Id_. p. 103, ll. 4-5; Williams Aff. ¶ 7; Watson Aff. ¶ 8.
[6] A detailed recitation of the undisputed material facts and records cites is contained in _Defendants' Statement of Undisputed Material Facts Supporting Motion for Summary Judgment_.
[7] Plaintiff's Dep. p. 70, l. 11; Plaintiff's Dep. Exhs. 8, 10.
[8] _Id._ Exh. 6.

During his employment, Plaintiff was aware of the Off-Hours Policy.[9]

      B.    *Plaintiff Violated Off-Hours Policy.*

On the evening of August 10, 2004, PetSmart employee Kristi Hill witnessed Plaintiff leaving the store alone during non-business hours carrying a large bag of store merchandise.[10]  On that night the store closed at 9:00 p.m.[11] The security report for August 10 shows that PetSmart employee Christi Sullivan closed the store at 10:26 p.m.; but that Plaintiff entered the store at 10:37 p.m. and left at 10:47 p.m.[12]  Plaintiff admits that he was never authorized to enter the store by himself.[13]  After seeing Plaintiff leave the store alone at 10:47 p.m., Hill notified Kelly Watson, the Store Manager, of Plaintiff's violation of the Off-Hours Policy and possible theft.[14]  Watson contacted Al Williams, District Manager, to inform him of the matter.[15]

---

[9] *Id.* p. 55, ll. 21-p. 57, ll. 25; p. 58, ll. 1-15; p. 61, ll. 21-p. 62, ll. 9.
[10] *See* Hill Affidavit.
[11] Plaintiff's Dep., p. 77, ll. 22-24; Williams Aff. ¶ 3.
[12] *Id.* Exh. 7; Watson Aff. ¶ 4.
[13] *Id.* p. 64, ll. 7-9.
[14] *See* Hill Aff. ¶ ¶ 4-5; Watson Aff. ¶ ¶ 3-5.
[15] *See* Williams Aff. ¶ 3; Watson Aff. ¶ 6.

Watson acquired computer printouts of the store access security reports.[16] Watson sent the computer printout to Williams and the two managers agreed to interview Plaintiff on August 13, 2004.[17]

      C.    *Plaintiff Was Not Detained Against His Will By Direct Restraint or Force.*

Plaintiff claims he was falsely imprisoned during the investigative interview of his conduct. Plaintiff is a 315 pound, former high school football "strong tackle", who is bigger than either Al Williams or Kelly Watson.[18] As set forth more fully below, Plaintiff voluntarily remained in an unlocked office where he was unobstructed from leaving. There is no allegation of actual or implied physical force against Plaintiff by either supervisor. Plaintiff even called his friends, and received two calls, including one from his lawyer during the alleged false imprisonment. He also chose when to leave the office, enter the store and continue his conversation with his lawyer in an adjacent office. Plaintiff's own version of his interview shows that he was not detained against his will by direct restraint or force.

---

[16] *See* Watson Aff. ¶ 4; Plaintiff's Dep. Exh. 7, p. 5.
[17] *See* Watson Aff. ¶ 6.
[18] Plaintiff's Dep., p. 69, ll. 2-4; p. 40, ll. 6-8.

4

According to Plaintiff, on August 13, 2004, Williams requested that Plaintiff come to the manager's office at the front of the store.[19]  Upon Williams' request, Plaintiff went to the store office to meet with Williams and Watson.[20]  The office had one door with a window.[21]  Williams closed the door.[22]  Plaintiff sat closest to the door and no one sat or stood in between him and the door.[23]  Plaintiff admits the office doors were not locked.[24]

After a moment of casual conversation, Williams asked Plaintiff if he had ever been in the store after hours.[25]  Plaintiff told Williams that he had been in the store after hours approximately "five or six times, maybe more, maybe less."[26] Williams then asked Plaintiff if he had ever taken merchandise out of the store.[27] In response to being asked "Have you ever taken merchandise out of the store, i.e. dog food," Plaintiff replied, "No, I've never stolen any merchandise out of the store."[28]

---

[19] *Id.* p. 85, ll. 25-p. 86, ll. 2.
[20] *Id.* p. 89, l. 3-4; p. 90, ll. 1-5; Plaintiff's Exhs. 2, 3.
[21] *Id.* p. 87, ll. 4-p. 88, ll. 13.
[22] *See* Williams Aff. ¶ 6; Plaintiff's Dep., p. 91, ll. 2-3.
[23] *Id*., p. 88, ll. 14-p. 89, ll. 25; p. 90, ll. 14-20; *Id.* Exh. 3.
[24] *Id.* p. 138, ll. 3-6.
[25] *Id.* p. 92, ll. 1-5; p. 93, ll. 16-24.
[26] *Id*. p. 94, ll. 3-20.
[27] *Id*. p. 96, ll. 20-25.
[28] *Id*. p. 96, ll. 20-25.

Plaintiff asked to use the telephone to call his attorney.[29]   According to Plaintiff, nobody denied him the ability to call his attorney and this was the first time he tried to use the telephone.[30]   Plaintiff states that when he picked up the telephone, "They [Williams and Watson] just sat there and looked at me."[31]   The only thing Williams said was that there was no need to get anyone else involved.[32] Plaintiff testified that he was "fumbling with my cell phone the whole time in my hand."[33]

Williams asked Plaintiff to sign a statement admitting to his wrongdoing.[34] At some point during the interview, Plaintiff voluntarily started writing a statement admitting that he violated the off-hours policy, "I Charles McKinley admit to coming in the building after hours."[35]   Plaintiff says that, "[A[bout time I was getting ready to call my lawyer, and I wanted to leave, because I was getting ready to just walk out the door."[36]   Williams stated, "If you walk out this door…we'll

---

[29] *Id*. p. 99, ll. 23-24; p. 100, ll. 3-4.
[30] *Id*. p. 105, ll. 1-5.
[31] *Id*. p. 106, ll. 19-20.
[32] *Id*. p. 100, ll. 6-7.
[33] *Id*. p. 105, ll. 20-p. 106, l. 1.
[34] *Id.* p. 100, ll. 11-15.
[35] *Id.* p. 112, ll. 17-p. 113, ll. 3; *Id.* Exh. 1.
[36] *Id*. p. 114, ll. 7-8.

have you arrested."[37]  Plaintiff admits that Williams did not tell him that he could not leave the office.[38]

At this time, Plaintiff told Williams that he was calling his attorney and began to use the office telephone to call his attorney.[39]  Plaintiff admits that Williams and Watson did not prevent him from using the phone.[40]  In search of the telephone number for his attorney, Plaintiff made three telephone calls to (1) his ex-girlfriend's father Gene Randolph;[41] (2) his ex-girlfriend's mother Catherine Randolph;[42] and (3) his ex-girlfriend's sister-in-law Lisa Randolph.[43]  Plaintiff did not ask Williams or Watson to leave the office while he was on any of these three calls.[44]  On the fourth call involving Plaintiff, Eugene Randolph called Plaintiff back on Plaintiff's cell phone and instructed Plaintiff that he would contact an attorney for Plaintiff.[45]  Approximately fifteen minutes later, Eugene Randolph arrived at the store with Cathy and Lisa, and Plaintiff says that Eugene Randolph

---

[37] *Id*. p. 114, ll. 4-11.
[38] *Id*. p. 104, ll. 11-20.
[39] *Id.* p. 104, ll. 25-p. 105, ll. 3.
[40] *Id.* p. 106, ll. 16-20.
[41] *Id*. p. 107, ll. 12-14.
[42] *Id*. p. 108, ll. 17-20.
[43] *Id.* p. 109, ll. 14-15.
[44] *Id.* p. 106, ll. 16-23.
[45] *Id.* p. 110, ll. 5-25.

"pushes the door open" to the office where the interview was being conducted.[46]

Randolph asked Plaintiff, "Did you ever steal dog food out of the store?"[47]

Plaintiff responded that he had never stolen any merchandise "to his knowledge."[48]

Randolph became mad with Plaintiff's equivocal response and said, "What is to

my knowledge mean, either you did or you didn't," and Plaintiff said "No, I

didn't."[49]

During this time, the attorney called Randolph's cell phone.[50]   Plaintiff

spoke with his attorney.[51]   While on the telephone with his attorney, Plaintiff

decided to leave the office.[52]   Plaintiff walked out of the office where Williams,

Watson, and Randolph remained, and into another store office.[53]   Plaintiff admits

that this was the first time he tried to walk out of the office.[54]   Williams and

Watson did not tell Plaintiff to remain in the office or use any force to prevent

Plaintiff from leaving the office and Plaintiff did not have to "fight his way out."[55]

---

[46] *Id.* p. 116, ll. 13-15; p. 117, ll. 1-25; p. 118, ll. 21-25.
[47] *Id.* p. 121, ll. 20-21.
[48] *Id.* p. 122, ll. 3-5.
[49] *Id.* p. 122, ll. 6-12.
[50] *Id.* p. 125, ll. 8-15.
[51] *Id.* p. 125, ll. 14-25; p. 126, ll. 2-5.
[52] *Id.* p. 126, ll. 21-p. 127, ll. 25.
[53] *Id.* p. 127, ll. 1-25; *Id.* Ex. 2.
[54] *Id.* p. 138, ll. 17-20.
[55] *Id.* p. 142, ll. 1-20; Williams Aff. ¶ 8; Watson Aff. ¶ 9; Plaintiff's Dep. Exh. 2.

After Plaintiff's telephone conversation ended, Williams was talking on his phone outside of the office where the interview was conducted.[56] Plaintiff walked out of the store.[57] He did not ask for permission.[58] Plaintiff admits that Williams and Watson did not do anything differently when he decided to leave the store than what they were doing during his interview.[59]

Plaintiff estimates that the interview lasted for approximately one hour and thirty minutes.[60] Plaintiff admits that neither Williams nor Watson ever locked the door, hit him or physically coerced him, threatened to hit him or hurt him, or threatened physical violence, and that the only time that he stood up and tried to walk out of the office is when he did leave the office.[61] Plaintiff was terminated for violating the Off-Hours Policy.[62]

D.     *There is No Evidence of Any Defamatory Comment.*

Plaintiff alleges that subsequent to his termination, Defendants defamed him by telling non-management employees about the circumstances surrounding his

---

[56] *Id.* p. 131, ll. 20-24.
[57] *Id.* p. 133, ll. 13-14.
[58] *Id.* p. 143, ll. 3-7.
[59] *Id.* p. 143, ll. 8-12.
[60] *Id.* p. 143, ll. 13-25; p. 144, ll. 1-11.
[61] *Id.* p. 138, ll. 3-23.
[62] *Id.* p. 103, ll. 4-5; Williams Aff. ¶ 7; Watson Aff. ¶ 8.

interview.[63]  On one occasion, Plaintiff visited the PetSmart store to take his dog to the veterinarian.[64]  He alleges that two or three employees asked him if he was fired for stealing dog food.[65]  Plaintiff does not recall any of the names of these employees.[66]  These employees did not tell Plaintiff where they had heard the rumor.[67]  These employees were groomers.[68]  On another occasion, while at the mall a former PetSmart co-worker asked Plaintiff if he was fired for stealing dog food.[69]  Plaintiff only recalls the first name of this former co-worker.[70]  This employee did not tell Plaintiff where she had heard the rumor.[71]  As to both rumors, Plaintiff admits that he has no evidence that Williams or Watson made the alleged statements.[72]  Williams and Watson did not discuss Plaintiff's termination or the circumstances surrounding the August 13 interview with any non-management employees.[73]

---

[63] Plaintiff's Amended Complaint, ¶ 10.
[64] *Id.* p. 147, ll. 16-25.
[65] *Id.* p. 147, ll. 23-25; p. 148, ll. 1; p. 151, ll. 22-25; p. 152, ll. 1-25.
[66] *Id.* p. 152, ll. 1-25.
[67] *Id.* p. 152, ll. 14-16.
[68] *Id.* p. 153, ll. 4-6.
[69] *Id.* p. 148, ll. 7-9.
[70] *Id.* p. 153, line 12.
[71] *Id.* p. 153, ll. 24-p. 154, l. 1.
[72] *Id.* p. 154, ll. 2-9.
[73] *See* Williams Aff. ¶ 12; Watson Aff. ¶ 13.

E.    *There is No Evidence that Defendants Tortiously Interfered With Plaintiff's Employment.*

Plaintiff alleges that Defendants tortiously interfered with his employment by giving "bad" references to prospective employers.[74] Specifically, Plaintiff alleges he was not offered employment by Petco because of a "bad" reference from Defendants.[75] Plaintiff interviewed for a job with a Petco the day after his termination from PetSmart.[76] Plaintiff interviewed with Petco District Manager and was told that he had to contact Plaintiff's past employers.[77] Plaintiff heard from a friend, a Petco Store Manager, that the Petco District Manager had told this store manager that he was going to "pass on you."[78] Plaintiff never talked to the Petco District Manager.[79] Plaintiff has no knowledge that the Petco District Manager ever called PetSmart.[80] When asked if Plaintiff knows whether Williams or Watson ever made a reference on his behalf, Plaintiff admits that he does not know if Williams or Watson ever provided a reference and no prospective employer informed Plaintiff that they received a "bad" reference from anyone at

---

[74] *See* Plaintiff's Amended Complaint ¶ 12; Plaintiff's Dep., p. 29, ll. 23-p. 37, ll. 6; p. 158, ll. 5-27.
[75] *Id.* p. 34, ll. 9-34.
[76] *Id.* p. 32, ll. 2-6.
[77] *Id*. p. 32, ll. 2-6.
[78] *Id*. p. 160, ll. 4-22.
[79] *Id.* p. 33, ll. 12-14.
[80] *Id.* p. 33, ll. 15-20.

PetSmart.[81]  Plaintiff also admits that  a prospective employer may have received "bad" references from a previous ambulance employer rather than PetSmart.[82]

## III.    ARGUMENT AND CITATION OF AUTHORITY.

### A.    *Summary Judgment Standard.*

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant summary judgment:

> [i]f the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment must be entered if the party opposing the motion "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment is not a "disfavored procedural shortcut, but rather [is] an integral part of the federal rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1).  Once the movant files a properly supported motion, the non-moving party may survive summary judgment only by going "beyond the pleadings" and presenting

---

[81] *Id.* p. 159, ll. 23-p. 160, l. 22; p. 35, ll. 4-25; p. 160, l. 1-7.
[82] *Id.* p. 160, ll. 23-25; p. 161 l. 1.

competent evidence of "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 323-24. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining which facts are material, the court must look to the applicable substantive law to determine whether the fact in dispute is relevant to any element of a claim or defense. *Id.*

      B.    *Plaintiff's Claim Of False Imprisonment Fails Because He Was Not Detained Against His Will By Direct Restraint or Force.*

Under Alabama law, false imprisonment is "the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code § 6-5-170. To prove his claim, Plaintiff must establish that there was some direct restraint of his person. *Williams v. Wal-Mart Stores*, 2000 U.S. Dist. LEXIS 14956, * 9. "Any exercise of force, or the express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or go where he does not wish to go, is an imprisonment." *Id.* * 9. [Copy Attached.].

Even viewing the facts most favorable to the Plaintiff, the evidence shows that Defendants did not falsely imprison Plaintiff. First, there is no evidence that

Defendants exercised any "direct restraint" of Plaintiff or blocked his path.  *See*

*Sanders v. Show Shoe*, 778 So.2d 820, 823 (Al. App. 2000) ("For there to be false

imprisonment, there must be a direct restraint of the person.  Any exercise of force,

or the express or implied threat of force, by which in fact the other person is

deprived of his liberty, compelled to remain where he does not wish to remain, or

to go where he does not wish to go, is an imprisonment.").  Remarkably, Plaintiff

admits that Defendants did not physically restrain or prevent him from leaving the

meeting.[83]  Plaintiff was next to an unlocked door.  No one was between Plaintiff

and the door.  Plaintiff also admits that Williams and Watson never told him that

he could not leave the office.

> Q.    Did he [Williams] use the words, "you cannot leave"?
> A.    I don't know if those words exactly came out of his mouth or not.
> Q.    No. The only words you remember are, "If you leave, we're going to turn this over to the police"?
> A.    Yes, sir…..

(Plaintiff's Dep., p. 104, l. 11-18.)   Although Plaintiff contends that Williams

continually said that there was no need for Plaintiff to call a lawyer, Plaintiff was

never stopped from using the office phone to make three calls trying to find his

lawyer and receiving two calls, including one from his lawyer.[84]   Plaintiff was

---

[83] Plaintiff's Dep., p. 137, l. 13-16; p. 138, 7-16.
[84] *Id.* p. 104, ll. 1-5; p. 106, ll. 16-20.

never falsely imprisoned and denied access to communicate with others. Further, Plaintiff could have physically left the store at any time, including after consulting with his lawyer.

In fact, Plaintiff's only argument for his false imprisonment is that Williams repeatedly told him that, "If you leave, you're going to be arrested."[85] This statement on its face clearly indicates that it was up to Plaintiff to decide to leave, and that he was not restrained. It was up to Plaintiff to decide whether to leave and risk the consequence of PetSmart notifying the police.

Under Alabama law, threats to call the police are not alone sufficient to effect an unlawful imprisonment. For example, in *Williams v. Wal-Mart Stores*, 2000 U.S. Dist. LEXIS 14956, the company accused plaintiff of stealing store merchandise. *Id.* at 3. The store's loss prevention officer called plaintiff into an office to discuss the incident. *Id.* The plaintiff denied any wrongdoing and did not ask nor attempt to leave the meeting. *Id.* At some point, the loss prevention officer allegedly threatened to call the police; but, he did not do so. Plaintiff claimed that the mere threat of arrest caused her to reasonably believe that she was confined. *Id.* Despite the loss prevention manager's statement about calling the police, the court held that no false imprisonment occurred because there was no

---

[85] *Id.* p. 102, ll. 23-25; p. 103, ll. 1-3.

"…issue of any use of force, actual or implied." *Id.* at 10. The court explained further:

> It is well settled that liability for false imprisonment, like liability for malicious prosecution, cannot be predicated merely on a person's good faith act of giving information to a police officer tending to show that a crime has been committed or on a person's good faith act of identifying one suspected of a crime, for such involvement in another's detention or arrest is not regarded in the law as an instigation of or participation in the detention or arrest. *Id.* at 10 (*citing Crown Central Petroleum Corp. v. Williams*, 679 So.2d 651, 654 (Ala. 1996)).

Moreover, Plaintiff's other admissions further undermine his claim that Defendants "used an express threat of force" that caused him to be falsely imprisoned.[86]  For example, Plaintiff testified that at one point during the interview he *left the office* to go into the store and then into an adjacent office where he continued to talk alone with his lawyer on his cell phone.[87]  *See Sanders*, 778 So.2d 820 (Ala. Civ. App. 2000) (finding summary judgment for defendant where plaintiffs were not restrained and left the store exactly when they chose to leave.) Plaintiff testified that while talking on the cellular phone with his attorney he voluntarily decided to walk out of the office leaving Williams and Watson behind

---

[86] *See* Plaintiff's Amended Complaint ¶ 7.
[87] Plaintiff's Dep., p. 127, ll. 1-25; *Id.* Exh. 2.

and neither manager attempted to stop him.[88]  In sum, Plaintiff has failed to show that a genuine issue of material fact exists to support his claim for false imprisonment.  Accordingly, summary judgment is appropriate.

C.    *PetSmart and Williams Never Defamed Plaintiff.*

Plaintiff fails to present evidence as to each element of his defamation claim: (1) a false or defamatory statement concerning the Plaintiff; (2) an unprivileged communication of that statement to a third party; (3) fault amounting at least to negligence; and (4) either actionability of the statement irrespective of special harm caused by the publication of the statement.  *Drill Parts and Service Co. v. Joy Mfg.*, 619 So.2d 1280, 1289 (Ala. 1993).

**1.    Plaintiff Presents No Evidence of a
False or Defamatory Statement.**

Plaintiff's defamation claim amounts to nothing more than that he heard rumors from non-management employees that he was fired for stealing dog food. The alleged rumors are inadmissible hearsay supposedly uttered by unidentified, non-management employees.  Further, there is no evidence of record before this Court that Al Williams or PetSmart started, or even knew about, these alleged rumors.  Neither Williams nor Watson revealed to anyone outside of management

---

[88] *Id.* p. 142, ll. 1-20; *Id.* Exh. 2.

any facts regarding the interview with Plaintiff and his admission to violating the Off-Hours Policy.[89]

Specifically, Plaintiff alleges that on two occasions PetSmart employees asked him if he was terminated for stealing store merchandise.[90] Plaintiff testified that on one occasion he visited the PetSmart store after his termination to take his dog to the veterinarian.[91] He alleges that two or three employees asked him if he was fired for stealing dog food.[92] On another occasion, while at the mall Plaintiff alleges that a former PetSmart co-worker asked him if he was terminated for stealing dog food.[93] Plaintiff concedes, however, that he does not know if Williams or Watson told anyone about the circumstances surrounding his interview. Plaintiff further admits that he has no proof that these rumors were started by Williams or Watson.

> Q.    So you have no evidence that it [alleged defamatory statements] came from Kelli [sic] or Al, correct?
> A.    I have no firsthand knowledge that it came from Kelli [sic] or from Al.
> Q.    Well, you don't even have any evidence, do you, not just firsthand knowledge?
> A.    You can say that……

---

[89] *See* Williams Aff. ¶ 12; Watson Aff. ¶ 13.
[90] Plaintiff's Dep., p. 147, ll. 16-25; p. 148, ll. 5-15; p. 152, ll. 1-p. 153, ll. 25
[91] *Id.* p. 147, ll. 16-25.
[92] *Id.* p. 147, ll. 23-p. 148, ll. 1; p. 151, ll. 22-p. 152, ll. 16.
[93] *Id.* p. 148, ll. 7-9.

(Plaintiff's Dep., 154: 2-9.)

Plaintiff's assumptions that Defendants *may have* communicated defamatory statements about him to third parties are unsupported and insufficient to satisfy the publication element of his burden of proof. *Watson v. McCrae*, 2001 U.S. Dist. LEXIS 7257, ** 49 (finding no defamation where there is no evidence that defendant published a defamatory statement to third party) [Copy Attached]. *Brown v. Infirmary Home Health Agency*, 1998 U.S. Dist. LEXIS 5326, ** 19 (granting summary judgment for defendant where plaintiff failed to provide evidence that "linked" the alleged defamatory statement to defendant) [Copy Attached]. Additionally, Plaintiff is unable to identify the names of each third party to whom the alleged defamatory statements were made.[94] *Williams v. Wal-Mart*, 2000 U.S. Dist. LEXIS 14956, ** 12 (finding no defamation where plaintiff could not provide the first or last names of third parties to whom alleged false statements were published.).

Plaintiff's unsupported admission that he has no evidence that Watson or Williams ever defamed him, and his admission that those reporting rumors to him never identified any management level employee's involvement in the rumors, dooms his defamation claim.

---

[94] *Id.* p. 153, ll. 12; p. 152, ll. 1-25.

D.    _Plaintiff Presents No Evidence That Defendants Tortiously Interfered With His Prospective Employment._

Alabama recognizes the intentional tort of tortious interference with business or contractual relations.  In order to state a claim for tortious interference, Plaintiff must establish the following elements:

> (1) the existence of a contract or business relation; (2) Defendant's knowledge of the contract or business relation; (3) Intentional interference by the defendant with the contract or business relation; (4) Absence of justification for the Defendant's interference; and (5) Damage to the Plaintiff as a result of defendant's interference.

_Teitel v. Wal-Mart_, 287 F.Supp. 2d 1268, 1282 (M.D. Al. 2003).  Additionally, to hold an individual employee liable for tortious interference, Plaintiff must prove that the individual was acting outside the scope of his employment and with malice. _Chalal v. Northwest Medical Center, Inc._, 147 F.Supp. 2d 1160, 1177 (N.D. Al. 2000).

Plaintiff alleges a cause of action against Defendants for tortious interference on the ground that Defendants wrongfully prevented him from securing future employment by placing an "adverse hiring status" against him.[95] Specifically, Plaintiff alleges that defendants gave "bad" references to Petco and

---

[95] _See_ Plaintiff's Amended Complaint, ¶ 12.

other prospective employers.[96]  Because Plaintiff fails to offer any proof to support the elements of a tortious interference claim, his allegation fails to survive Defendants' Motion for Summary Judgment.

### 1.     Plaintiff Fails to Prove the Existence of a Contract or Business Relation.

Because Plaintiff alleges only that *prospective* and not *existing* employment was interfered with, he cannot show the *existence* of a contract or business relationship—an essential element of this claim.  Plaintiff does not testify that any employer made an offer of employment before the alleged reference by PetSmart.

### 2.     Plaintiff Fails to Prove Defendants' Knowledge of the Contract or Business Relation.

Plaintiff admits that no prospective employer informed him that they contacted Defendants.  As a result, Plaintiff cannot establish that Defendants had knowledge of a prospective relationship between Plaintiff and any prospective employer.  Additionally, Plaintiff admits that no prospective employer told him they received any reference, much less a "bad" reference, from Defendants.[97]  Remarkably, Plaintiff's own admissions demonstrate that Defendants were unaware of any third parties or prospective employers and that Defendants did not

---

[96] *Id.*; Plaintiff's Dep., p. 29, ll. 23-p. 37, ll. 6; p. 158, ll. 5-27.  PetSmart abides by a neutral reference policy.  *Id.* p. 36, ll. 13-16.

[97] *Id.* p. 33, ll. 12-p. 35, ll. 25; p. 159, ll. 5-25; p. 160, ll.  1-7.

undertake any action to inform these parties of the circumstances surrounding

Plaintiff's termination.

> Q.    Did any of these people [prospective employers] tell you they had gotten a bad reference from PetSmart?
> A.    No.
> Q.    Did any of these companies tell you they had contacted PetSmart?
> A.    No.
> Q.    Has anybody ever told you that PetSmart had given you a bad reference?
> A.    No

(*Id.*, pp. 35:4-35:12.)

Plaintiff further testified:

> Q.    But you don't know one way or the other if Kelli [sic] ever gave references, is that right?
> A.    No, sir, I don't.  I know that I referred everything to her when I was a manager.
> Q.    Do you think Al Williams interfered with your employment at Petco?
> A.    I don't know if Kelli [sic] referred them [prospective employers] to Al. I couldn't tell you.

(Plaintiff's Dep., pp. 159:23-160:7.)

Therefore, Plaintiff cannot prove that Defendants had any knowledge of his efforts

to secure future employment.

### 3. Plaintiff Fails to Prove Both Absence of Justification and Intentional Interference By Defendants.

In order for Defendants to be "justified" in communicating with a prospective employer, Plaintiff must first offer proof that a communication occurred. Plaintiff cannot do so.[98]  Moreover, Plaintiff fails to offer any proof that Defendants had any knowledge of any prospective employers—much less any interaction with them.   Plaintiff's utter lack of proof on these two essential elements of his claim again prove fatal.

### 4. Plaintiff Fails to Prove Damage as a Result of Defendants' Interference.

Plaintiff's only damage allegation is that he has had difficulty obtaining employment post-PetSmart. Plaintiff simply "feels" that bad references were given because there was a "long stint of employment where I was actively seeking employment with PetSmart listed as a reference, and never got hired with anybody."[99]  In fact, Plaintiff even admits that at least one former employer may have provided a negative reference.[100]   Consequently, Plaintiff's assertion that PetSmart specifically caused him not to get employed more quickly is pure speculation and, therefore, insufficient to support his tortious interference claim.

---

[98] *Id.* p. 33, ll. 12-25; p. 34, ll. 9-25; p. 35, ll. 4-25; p. 159, ll. 5-25; p. 160, ll. 1-7.
[99] *Id.* p. 158, ll. 12-17.
[100] *Id.* p. 160, ll. 23-p. 161, l. 1.

5.     **Plaintiff Fails To Prove That Williams Or Watson Acted Outside The Scope Of Their Employment And With Malice.**

Plaintiff does not contend that Williams or Watson acted with malice. Rather, he alleges—completely without support—that they made disclosures to prospective employers. He also admits (as noted above), that the source of "bad" references could have been other former employers.[101]

Because Plaintiff cannot show that Defendants actually communicated with any prospective employers, Plaintiff's tortious interference claim fails as a matter of law. *Pouncy v. Vulcan Materials Co.*, 920 F.Supp 1566 (N.D. Al. 1996) (holding no tortious interference where there is no evidence that former employer disclosed the circumstances surrounding plaintiff's discharge); *Digitel Corporation v. Deltacom,* Inc., 953 F.Supp. 1486 (M.D. Al. 1996) (finding no tortious interference where there is no evidence of communication.)

Consequently, Plaintiff's claim must be dismissed in its entirety.

## IV.     CONCLUSION

Based on the foregoing arguments and authorities, Defendants respectfully request that this Court grant its Motion for Summary Judgment and dismiss Plaintiff's Amended Complaint against Defendants PetSmart, Inc. and Al Williams

---

[101] *Id.* p. 160, ll. 23-25; p. 161, l. 1.

in its entirety and with prejudice, awarding Defendants their costs and such other relief as may be appropriate.

Respectfully submitted this 18th day of April 2006.

**s/ Donald W. Benson, Esq.**
Donald W. Benson
*Pro Hac Vice*
Georgia Bar No. 052350
A. R. Tulani Grundy
*Pro Hac Vice*
Georgia Bar No. 141522
Charlotte K. McClusky
Alabama Bar No. 5296A57M
Attorneys for Defendants
LITTLER MENDELSON, PC
3348 Peachtree Road, NE
Suite 1100
Atlanta, GA  30326-1008
Telephone:  (404) 233-0330
Facsimile:  (404) 233-2361
Email: dbenson@littler.com

25

N THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHARLES MCKINLEY,

      Plaintiff,

v.

PETSMART, INC., and AL
WILLIAMS,

      Defendants.

CIVIL ACTION NO. 2:05-CV-562-F

*CERTIFICATE OF SERVICE*

It is hereby certified that on April 18, 2006, I electronically filed the

foregoing **Memorandum of Law in Support of Defendants' Motion for Summary**

**Judgment** with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the following: Deborah Q. Harding.

                    **s/ Donald W. Benson, Esq.**
                    *Pro Hac Vice*
                    Georgia Bar No. 052350
                    Attorney for Defendants

LITTLER MENDELSON, PC
3348 Peachtree Road, NE, Ste. 1100
Atlanta, Georgia 30326-1008
Telephone:  (404) 233-0330
Facsimile:  (404) 233-2361
E-mail: dbenson@littler.com