**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **CHARLES MCKINLEY,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. 2:05-CV-562-F** |
| **PETSMART, INC., and AL WILLIAMS,** | |
| **Defendants.** | |

# **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................... 14

I.    INTRODUCTION ............................................................................................. 1

II.    ARGUMENT ..................................................................................................... 2

        A.    *Plaintiff's Cause of Action for False Imprisonment Fails Because Plaintiff Cannot Establish That The Threat of Arrest Constitutes False Imprisonment.* ................................................. 2

        B.    *Plaintiff's Defamation Claim Fails Because Plaintiff Fails to Prove that Defendants "Published" The Allegations Against Plaintiff to Mr. Randolph.* ............................................................. 7

        C.    *Plaintiff Abandons His Tortious Interference With Employment Claim.* ....................................................................................... 12

III.    CONCLUSION ............................................................................................... 12

***DEFENDANTS' REPLY IN SUPPORT OF***
***MOTION FOR SUMMARY JUDGMENT***

**I.   INTRODUCTION**

Defendants PetSmart, Inc. and Al Williams (collectively "Defendants") have requested summary adjudication regarding Plaintiff's claims false imprisonment, defamation of character, and tortious interference with employment. Plaintiff's Response to Defendants' Motion for Summary Judgment identified no genuine issue of material fact regarding Plaintiff's causes of action. To defeat a motion for summary judgment, the non-moving party must offer specific facts contradicting those set forth by the movant, thereby showing that there is a genuine issue for trial. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188 (1990). Plaintiff has failed to meet this burden and, consequently, Defendants' summary judgment motion should be granted.

As a preliminary matter, Plaintiff completely abandons his tortious interference with employment claim in his Response by failing to address the undisputed material facts and case law cited by Defendants. Accordingly, Defendants are entitled to summary judgment on this claim. As demonstrated below, Defendants also are entitled to summary judgment on Plaintiff's alleged false imprisonment and defamation of character claims because Plaintiff fails to establish that a mere

"threat" of an arrest constitutes false imprisonment and Plaintiff fails to prove the "publication" of any alleged defamatory statements.

## II. ARGUMENT

A. *Plaintiff's Cause of Action for False Imprisonment Fails Because Plaintiff Cannot Establish That The Threat Of Arrest Constitutes False Imprisonment.*

Plaintiff fails to support his false imprisonment claim with either evidence or case law. Specifically, Plaintiff (1) fails to dispute that merely threatening to call the police is not false imprisonment under *Williams v. Wal-Mart*, 2000 U.S. Dist. LEXIS 14956, 14959; (2) cites no case law that supports his argument that promising to report a matter to the police constitutes false imprisonment; and (3) fails to point to any facts to show that he was detained.

Plaintiff's attempts to distinguish the facts of this case from those of *Williams,* 2000 U.S. Dist. LEXIS 14956 * 9, amount to "smoke and mirrors." In *Williams*, the loss prevention manager "exhibited a badge and threatened to call the police." *Id.* at * 8. The court held that giving information to the police or identifying a suspect for arrest can not alone constitute false imprisonment. *Id.* at * 9. In the facts of this case, Plaintiff admits that the police never came and that he

was not arrested.[1]  In support of his claim, Plaintiff only testifies that Williams told him, "If you leave, we're going to turn this over to the police."[2]  As the *Williams* court's analysis demonstrates, the *threat* to call the police does *not* constitute false imprisonment.  *Williams* at * 4.

Plaintiff's efforts to distinguish *Williams* are further undermined because Plaintiff admits that no physical force was used to restrain him during the interview[3], concedes that no one stopped him from leaving when he walked out of the interview room[4], and acknowledges that he was not prevented from using the telephone to call his attorney.[5]  Moreover, Plaintiff ignores the undisputed material fact that Plaintiff, in the present matter, was never told that he could not leave and was not stopped when he decided to walk out of the office.[6]  Notably, Plaintiff's argument that the threat of calling the police made him feel confined was specifically *rejected by the Williams court.  Id.* at * 9.  Consequently, based on these facts and the holding in *Williams,* Plaintiff's mere assertion that Al Williams'

---

[1] *Id.* p. 135, ll. 5-10.
[2] *Id.* p. 104, ll. 16-17.
[3] Plaintiff's Response, p. 3.
[4] *Id.* p. 4.
[5] *See Defendants' Statement of Undisputed Material Facts* No. 27.
[6] Plaintiff's Dep., p. 104, ll. 11-20; p. 127, ll. 1-25; p. 142, ll. 1-20.

alleged statement that "[w]e're going to turn this over to the police"[7] constitutes false imprisonment is wholly unsupported in law and in fact mandating summary judgment in Defendants' favor.

Similarly, Defendants cite to *Crown Central Petroleum Corp. v. Williams,* 679 So.2d 651 (Ala. 1996) in their Motion for Summary Judgment for the proposition that:

> It is well settled that liability for false imprisonment, like liability for malicious prosecution, cannot be predicated merely on a person's good faith act of giving information to a police officer tending to show that a crime has been committed or on a person's good faith act of identifying one suspected of a crime, for such involvement in another's detention or arrest is not regarded in the law as an instigation of or participation in the detention or arrest. *Id.* at 654.

Plaintiff does not deny the holding of *Crown Central*. Plaintiff, however, attempts to distinguish the *Crown Central* holding by arguing that Defendants' questioning of Plaintiff amounts to false imprisonment, not because the police were ultimately called, but instead, because Defendants sought to obtain "a false incriminating statement from the plaintiff."[8] Again, Plaintiff attempts to make a distinction

---

[7] *Id.* p. 104, ll. 16-17.
[8] Plaintiff's Response, p. 4.

4

without support of any case law.  In *Crown Central*, the clear holding found that a store clerk could not be charged with false imprisonment when she, following an armed robbery, called the police and provided a description of the alleged robbers who were subsequently retained by the police.  *Id.* at 653.  After visually identifying the suspects once, the store clerk did not otherwise interact with the suspects and the suspects were not store employees.  *Id.* at 654.

Finally, Plaintiff's citation to *Big B, Inc. v. Cottingham*, 634 So. 2d 999 (Ala. 1993) is not instructive because the highly disturbing facts of that case are completely distinguishable from the facts as alleged by Plaintiff.  As Plaintiff admits, "the facts of *Big B* are not similar to this instance."[9]  In that case, the plaintiff – a female – was retained alone in the "back room" by a male manager who also was a former Marine who "stood between [her] and the door" and admitted to "verbally abus[ing] her… in a manner which no human being should have ever went through."  *Id.* at 1002.  The manager then "grabbed the [plaintiff] by her arms and forced her to perform fellatio on him by threatening to file a criminal complaint against her" though he knew that she had not been involved in stealing from the store.  *Id.* at 1002.  Clearly the allegations in *Big B* amount to

---

[9] Plaintiff's Response, p. 5, ll. 8-9.

more than a simple "threat[ ] of calling the police" as Plaintiff alleges in his brief.[10] Again, Plaintiff admits that no physical force was used to restrain him during the interview[11], concedes that no one stopped him from leaving when he walked out of the interview room[12], and acknowledges that he was not prevented from using the telephone to call his attorney.[13]  Although Plaintiff correctly points out that the plaintiff in *Big B* was detained, he cites no testimony that shows that he was, in fact, detained. Because the allegations in our case are no where near those alleged in *Big B*, the holding in that case is inapplicable to our facts.

Based on the foregoing, Defendants are entitled to summary judgment on Plaintiff's false imprisonment claim. As demonstrated by Plaintiff's own admissions, there was absolutely nothing impermissible about the Defendants' investigation of Plaintiff's violation of Company policy and possible theft of store merchandise. In fact, during the interview, Plaintiff admitted to violating Company policy by entering the store after hours by himself.[14] Moreover, Defendants never prevented Plaintiff from leaving the room and, in fact, the

---

[10] *Id*. p. 5.
[11] *Id*. p. 3.
[12] *Id*. p. 4.
[13] *See Defendants' Statement of Undisputed Material Facts* No. 27.
[14] Plaintiff's Dep., p. 94, ll. 3-20.

6

Plaintiff *actually* left the room  Therefore, Plaintiff simply fails to establish a claim for false imprisonment and judgment in favor of Defendants should be granted.

B. *Plaintiff's Defamation Claim Fails Because Plaintiff Fails to Prove that Defendants "Published" The Allegations Against Plaintiff to Mr. Randolph.*

In his Response, Plaintiff asserts for the *very first time* that Defendants defamed him by revealing the nature of the allegations regarding his alleged theft to Eugene Randolph, the *friend* that *Plaintiff invited as his agent and defender into the meeting* where Defendant's managers were discussing *the allegations.* Notably, this claim is distinctly different from those asserted in his Complaint wherein Plaintiff alleged Defendants "defamed" him to "other PetSmart employees and other employers."[15]  Randolph is neither a PetSmart employee or potential employer, but the father of Plaintiff's girlfriend, at the time, whose house he was currently living.[16]  Consequently, Plaintiff abandons any defamation claims resulting from alleged disclosures to anyone except Randolph.

To prove defamation**,** Plaintiff must show that Defendants published a false and defamatory statement concerning Plaintiff to a third person.  *Watson v.*

---

[15] *Defendants' Motion for Summary Judgment* Ex. No. 4, ¶ 10.
[16] Plaintiff's Dep., p. 16, ll. 20-p. 17, l. 13. (Attached hereto as Exhibit 1)

7

*MaCrae, Inc.*, 2001 U.S. Dist. LEXIS 7257, * 47 (S.D. Al.) (stating that publication is an essential element of defamation.)  In essence, Plaintiff must demonstrate that Defendants informed a third party of information that the Plaintiff did not authorize for disclosure.  Importantly, Plaintiff's claim fails because none of Defendant's managers "published" the allegations against Plaintiff to Randolph and Plaintiff has not presented any evidence to the contrary.

As the facts demonstrate, Plaintiff told Randolph first about the allegations against him.[17]  Consequently, any alleged confirmation by Williams resulting from Plaintiff's *self-publication* does not constitute a defamatory "publication."  In instances where a plaintiff has voluntarily disclosed negative information, courts have found that there is no defamation.  For example, in *Anderson v. Independent School Dist.*, 357 F.3d 806 (8th Cir. 2004), plaintiff received a suspension letter from his employer which contained negative information regarding plaintiff's drug test.  The plaintiff claimed that defendants defamed him by disclosing this information to a third party.  The court rejected plaintiff's defamation claim and held that because plaintiff voluntarily "self-published" the letter he was responsible for any subsequent harm to his reputation. *Id.* at 809.  *See also Merritt v. Brantley*,

---

[17] *Id.* p. 109 ll. 20-p. 110, l. 12.

936 F.Supp. 988, 993 (S.D. Ga. 1996) (finding no defamation where plaintiff self-published information). Similarly, *before* Randolph arrived at the PetSmart store, Plaintiff had already told Randolph (and another Randolph family member) about the allegations against him.[18] Indeed, *in Williams' presence*, Plaintiff told both Lisa Randolph and Eugene Randolph about the allegations against him. Plaintiff testified that he first dialed Eugene's phone number, but was unable to reach him.[19] In an attempt to locate Eugene, Plaintiff called Lisa Randolph, Eugene's daughter-in-law. Plaintiff testified:

> Q. Did you call her [Lisa Randolph's] cell phone?
> A. Yes.
> Q. Tell me about that conversation.
> A. *I told her* that I didn't have a lot of time to explain, but basically *that PetSmart was trying to get me to sign some paperwork that said that I stole merchandise from the store*…..I said that I needed to get in touch with Gene. And she said that Gene was with Cathy She would get ahold of him and kept me on the phone until Gene called my cell phone.
> Q. Okay.
> A. So at that time I let her [Lisa Randolph] go. I talked to Gene [Eugene Randolph], *I told Gene exactly what was going on*. I told him that I'd gotten called into the office by Kelli [sic] and Al, that I was being interrogated….

Plaintiff's Dep., p. 109, ll. 20-p. 110, l. 12 (emphasis added). During the

---

[18] *Id.,* p. 109 ll. 20-p. 110, l. 12.
[19] *Id.*, p. 108, ll. 4-10.

9

conversation with Plaintiff, Eugene agreed to contact Plaintiff's attorney.[20] Eugene contacted the attorney on Plaintiff's behalf and "explained everything" to him.[21] Eugene also informed Plaintiff that he was "on his way" to the PetSmart store.[22] Plaintiff never objected to Eugene coming to the store. Eugene then went to the PetSmart store and entered the office where the interview with Plaintiff was being held.[23] At no time did Plaintiff tell Eugene to leave the meeting.

Plaintiff should not now be permitted to claim that PetSmart published the allegations against Plaintiff when it was Plaintiff who informed Randolph first of the allegations before Randolph even arrived at the store, and permitted Randolph, his agent for contacting his attorney, to enter the meeting and never told Randolph to leave. In instances where plaintiffs have authorized "agents" to participate in discussions where negative information about a plaintiff is being discussed, courts have held that a "publication" does not occur, thereby defeating a defamation claim. For example, in *Reece v. Finch*, 562 So.2d 195 (1990 Ala.), the court held that statement's made to one's agent are not defamatory because they are both authorized and invited. In *Reece*, the plaintiff doctor granted his insurance

---

[20] *Id*. p. 110, ll. 24-p. 111, l. 3. (Attached hereto as Exhibit 2)
[21] *Id*. p. 115, ll. 13-21. (Attached hereto as Exhibit 3)
[22] *Id*. p. 110, ll. 24-p. 111, l. 3.
[23] *Defendants' Statement of Undisputed Material Facts* No. 30.

company permission to conduct a background investigation and to interview his colleagues. During this investigation, the doctor's colleagues made negative comments about him and recommended that he not be insured. The plaintiff brought an action against his colleagues for defamation. In rejecting Reece's claim, the court held that there was no "publication" of the statements because the doctor authorized the insurance company to obtain information from the colleagues for plaintiff's use. Consequently, the court held that the insurance company and its employees were the plaintiff's agent. *Id.* at \*\* 9. *See also McDaniel v. Crescent Motors, Inc.*, 249 Ala. 330 (1947) (finding no publication where Plaintiff invited discussion of alleged defamatory matter.) Similarly, Plaintiff called Randolph—*in the presence of PetSmart managers*[24]—to tell him about the allegations.[25] Plaintiff appointed and authorized Randolph to contact his attorney and Randolph called the attorney on Plaintiff's behalf.[26] When Randolph came to "defend" Plaintiff, Plaintiff did not object to his presence and permitted Randolph to enter the office where the discussions were occurring. Here, as in *Reece*, Plaintiff invited and authorized Randolph as his agent, thus, any statements allegedly made to Randolph

---

[24] Plaintiff's Dep., p. 106, ll. 16-23.
[25] *Id*. p. 107, ll. 12-14.
[26] *Id*. p. 110, ll. 5-p. 111, l. 3.

11

are not deemed to have been "published." Under these circumstances, Plaintiff's claim is simply meritless.

C. *Plaintiff Abandons His Tortious Interference With Employment Claim.*

In his Response, Plaintiff abandons his tortious interference with employment claim. Plaintiff alleged that Defendants tortiously intereferred with his employment by giving "bad" references to prospective employers.[27] Defendants move for summary judgment on the basis that Plaintiff's own testimony that he has no evidence of any such bad reference by PetSmart.[28] Plaintiff fails to address this claim in his Response. Consequently, summary judgment is warranted.

### III. CONCLUSION

Based upon the foregoing, Defendants PetSmart, Inc. and Al Williams jointly and individually request that this Court grant its Motion for Summary Judgment and dismiss Plaintiff's Complaint against Defendants PetSmart, Inc. and Al Williams in its entirety and with prejudice, awarding Defendants their costs and such other relief as may be appropriate.

Respectfully submitted this 12th day of May 2006.

---

[27] *Id.* p. 29, ll. 23-p. 37, ll. 6; p. 158, ll. 5-27.
[28] *Id.*

          **s/ Donald W. Benson, Esq.**
Donald W. Benson
*Pro Hac Vice*
Georgia Bar No. 052350
A. R. Tulani Grundy
*Pro Hac Vice*
Georgia Bar No. 141522
Charlotte K. McClusky
Alabama Bar No. 5296A57M
Attorneys for Defendants
LITTLER MENDELSON, PC
3348 Peachtree Road, NE, Suite 1100
Atlanta, GA  30326-1008
Telephone:  (404) 233-0330
Facsimile:  (404) 233-2361
Email: dbenson@littler.com

# **TABLE OF AUTHORITIES**

**CASES**                                                                                           **PAGE**

*Lujan v. National Wiildlife Fed'n*
   497 U.S. 871, 888, 110 S. Ct. 3177, 3188 (1990) ................................................1

*Williams v. Wal-Mart Stores,*
   2000 U.S. Dist. LEXIS 14956 *9 ..................................................................2, 3

*Big B. v. Cottingham*
   634 So. 2d. 999 (Ala. 1993) ........................................................................5, 6

*Crown Central Petroleum Corp. v. Williams*,
   679 So.2d 651, 654 (Ala. 1996) ..................................................................4, 5

*Anderson v. Independent School Dist.,*
357 F.3d 806, 809 (8th Cir. 2004)………………………………………………..8

*Merritt v. Brantley*,
936 F.Supp. 988, 993 (S.D. Ga. 1996)…………………………………………..8

*McDaniel v. Crescent Motors, Inc.,*
   249 Ala. 330 (1947) .......................................................................................11

*Reece v. Finch,*
   562 So.2d 195 (1990 Ala.) .....................................................................10, 11

14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| CHARLES MCKINLEY,<br><br>  Plaintiff,<br><br>v.<br><br>PETSMART, INC., and AL WILLIAMS,<br><br>  Defendants. | CIVIL ACTION NO. 2:05-CV-562-F |

### *CERTIFICATE OF SERVICE*

It is hereby certified that on May 12, 2006, I electronically filed the foregoing ***Defendants' Reply In Support of Motion for Summary Judgment*** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Deborah Q. Harding.

              **s/ Donald W. Benson, Esq.**
              *Pro Hac Vice*
              Georgia Bar No. 052350
              Attorney for Defendants

LITTLER MENDELSON, PC
3348 Peachtree Road, NE, Ste. 1100
Atlanta, Georgia 30326-1008
Telephone: (404) 233-0330
Facsimile: (404) 233-2361
E-mail: dbenson@littler.com

15