IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHARLES MCKINLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No: 2:05-cv-562-MEF |
| | ) (WO) |
| PETSMART, INC., *et. al.* | ) |
| | ) |
| Defendants. | ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Charles McKinley brings suit against his former employer PetSmart, Inc. (hereinafter "PetSmart") and Al Williams, the District Manager for the PetSmart location at which he was employed. McKinley alleges false imprisonment, defamation, and tortious interference with employment. This cause is presently before the Court on Defendants' Motion for Summary Judgment (Doc. # 36).

**I. Jurisdiction and Venue**

The Court exercises subject matter jurisdiction over this action pursuant 28 U.S.C. § 1332, based upon the parties' diversity of citizenship and an amount in controversy exceeding $75,000.00, exclusive of interest and costs.

**II. Summary Judgment Standard**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale,* 333F.3d 1234, 1243 (11th Cir. 2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable

to the non-movant). After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal marks and citations omitted)).

### IV. Facts

During the relevant time period, McKinley was employed as a Presentation Manager at PetSmart's East Chase Plaza location in Montgomery, Alabama. At that time, PetSmart had an Off-Hours Access Control Policy and Procedure (hereinafter "Off-Hours Policy"), which provided that:

> During non-business hours the store is required to be secure and access to the store controlled. . . . During non-business hours there must be at least two individuals in the store at any given time.

The security report for August 10, 2004 shows that Christi Sullivan closed the store at 10:26 p.m. and that McKinley entered the store at 10:37 p.m. and left at 10:47 p.m. That night, PetSmart employee Kristi Hill witnessed McKinley leaving the store alone during non-

business hours carrying a large bag of store merchandise. Hill notified Kelly Watson, the Store Manager, of what she had seen. Watson then informed Al Williams, the District Manager, of the matter. Watson and Williams reviewed the security report and agreed to meet with McKinley on August 13, 2004.

On August 13, 2004, Williams visited the PetSmart store on routine business. He met McKinley in the store and requested that McKinley come to the manager's office in the front of the store. The manager's office has one door and the door has a window in it. McKinley went into the office and Williams closed the door but did not lock it. Watson was also in the office and witnessed the exchange between McKinley and Williams. McKinley sat closest to the door and no one stood in between him and the door. After a short casual conversation, Williams asked McKinley if he had ever been in the store after hours. McKinley replied that he had been in the store after hours approximately five or six times. McKinley explained that he had been in the store after hours to get the planogram done. Williams asked McKinley if he had ever taken merchandise out of the store and McKinley replied that he had never stolen anything from the store. At that point, McKinley asked to use the phone to call his lawyer. Williams said that there was no reason to get anyone else involved and said that McKinley would need to sign paperwork stating that he had stolen merchandise. McKinley replied that he had never stolen dog food from the store and therefore would not admit to it in writing. At that point, McKinley alleges that he was crying and asked to leave the office to regain his composure. Williams said, "If you leave,

you're going to be arrested. Regardless, you're already fired." McKinley then picked up the office phone to call his lawyer and Williams allowed him to do so. In order to obtain the phone number of his attorney, McKinley called his ex-girlfriend's father Eugene Randolph, his ex-girlfriend's mother Catherine Randolph, and his ex-girlfriend's sister Lisa Randolph. Watson and Williams did not stop McKinley from making these calls but remained in the office while he was on the phone.

Eugene Randolph called McKinley back on McKinley's cell phone and told McKinley that he would contact an attorney for McKinley. Approximately fifteen minutes later, Eugene arrived at the store with Cathy and Lisa. Eugene entered the office and asked McKinley if he had ever stolen any dog food out of the store. McKinley responded that he had never stolen any merchandise "to his knowledge." Eugene said, "What is to my knowledge mean, either you did or you didn't." McKinley stated that he did not.

At this time, the attorney called Eugene's cell phone. Eugene gave the phone to McKinley to speak with the attorney. While on the phone with the attorney, McKinley left the manager's office and walked into another store office. After McKinley's phone conversation ended, Eugene spoke to the attorney. Then, McKinley turned in his keys and name badge and was told to leave the store, which he did. McKinley was subsequently fired from his position as Presentation Manager. At some point during the meeting, McKinley signed a statement admitting that he had been to the store after hours. PetSmart claims he was terminated for violating the Off-Hours Policy.

Following his termination, McKinley visited the PetSmart store to bring his dog to the veterinarian. He alleges that at that time two or three groomer employees asked him if he had been fired for stealing dog food. On another occasion, McKinley saw a former PetSmart co-worker at the mall and the co-worker asked him if he was fired for stealing dog food. These individuals did not tell McKinley from whom they had heard about his termination. Williams and Watson assert that they did not discuss the August 13, 2004 meeting or the circumstances surrounding McKinley's termination with any non-management employees.

The day after his termination, McKinley interviewed for a job with Petco. The Petco District Manager told McKinley that he would have to contact McKinley's past employers. McKinley later heard from his friend Joe, a Petco Store Manager, that the District Manager had told Joe that the District Manager was going to "pass" on McKinley. McKinley does not know whether the Petco District Manager ever contacted PetSmart for a reference.

## V. Discussion

In his Amended Complaint, McKinley alleges false imprisonment (Count I), defamation of character (Count II), and tortious interference with employment (Count III). Defendants request that the Court grant summary judgment on all three counts. The Court will address each in turn.

*A.     False Imprisonment*

McKinley alleges false imprisonment in violation of Alabama Code § 6-5-170 in that PetSmart and Watson used an express threat of force to detain McKinley. Specifically, McKinley alleges that he was forced to choose between signing a false statement or being arrested if he left without signing the statement.

Alabama Code § 6-5-170 defines false imprisonment as "the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code § 6-5-170. False imprisonment requires some direct restraint of the person. *Crutcher v. Wendy's of North Alabama, Inc.*, 857 So. 2d 82, 92 (Ala. 2003). "Any exercise of force, or the express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment." *Id.* An employer may be held liable for a false imprisonment committed by one of its employees while acting within the line and scope of his employment. *Id.*

It is undisputed that McKinley was not physically restrained in any way nor was he stopped from using the phone when he asked to do so. Moreover, while speaking on a cell phone with his attorney, McKinley left the first office and walked into a second office without being stopped by either Williams or Watson. McKinley's false imprisonment claim is based only on his assertion that Williams tried to get him to sign a statement and threatened to call the police if he tried to leave. Under Alabama law "[i]t is well-settled that

liability for false imprisonment . . . cannot be predicated merely on a person's good faith act of giving information to a police officer tending to show that a crime has been committed or on a person's good faith act of identifying one suspected of a crime." *Crown Central Petroleum Corp. v. Williams*, 679 So. 2d 651, 654 (Ala. 1996). It thus follows that the mere threat to give information to the police tending to show that a crime had been committed does not constitute false imprisonment, assuming a good faith belief that a crime had been committed. *See Williams v. Wal-Mart Stores, Inc.*, No. Civ. 99-1032-AH-C, 2000 WL 1367977, at *3 (S.D. Ala. Sept. 5, 2000)(granting of summary judgment on false imprisonment claim where, during meeting in which employee was accused of stealing from store, loss prevention officer threatened to call the police). There is no evidence that Williams was acting in bad faith in questioning McKinley about the potential commission of a crime. Therefore, summary judgement is due to be granted in favor of Defendants on McKinley's false imprisonment claim.

B.    *Defamation of Character*

McKinley asserts that PetSmart has defamed McKinley's reputation by telling others that he was fired for stealing from the store. Under Alabama law, the elements for a cause of action for defamation are "1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting to at least negligence; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement." *Drill Parts and Serv. Co. v. Joy Mfg. Co.*, 619 So. 2d 1280. 1289 (Ala. 1993).

8

In his Amended Complaint, McKinley alleges that his reputation was defamed "to other employees and other employers." However, in his Response to Defendant's Motion for Summary Judgment, he makes no mention of defamation concerning other employees or employers, which the Court takes to mean that he has abandoned any defamation claim as to other employees or other employers. Nonetheless, assuming McKinley still intends to pursue such a claim, the Court finds that summary judgment is due to be granted in favor of the Defendants on that claim. McKinley alleges that on two occasions PetSmart employees asked him if he was fired for stealing merchandise from the store. However, he presents no evidence that Defendants communicated to anyone that he was terminated for stealing. His mere assumption that Defendants may have communicated this information to other PetSmart employees is insufficient to satisfy the publication element of his defamation claim. *See Brown v. Infirmary Home Health Agency, Inc.*, Civil Action No. 97-0472-RV-S, 1998 U.S. Dist. LEXIS 5326, at *19 (S.D. Ala. Mar. 25, 1998)(granting summary judgment where plaintiff failed to link the alleged disclosure to the defendant).

In his Response to Defendant's Motion for Summary Judgment, McKinley makes an entirely different defamation claim. Specifically, he alleges that the defamation occurred when Eugene Randolph arrived at the store and Williams informed Eugene that McKinley had stolen merchandise from the store. Though it is difficult to see how this argument arises from the allegations in the Amended Complaint, the Court will nonetheless address it. The undisputed evidence shows that before Eugene arrived at the store, McKinley spoke with him on the phone and told him "exactly what was going on." Where a plaintiff has

9

voluntarily disclosed the allegedly defamatory information, a claim of defamation cannot be sustained. *See Gore v. Health-Tex., Inc.*, 567 So. 2d 1307, 1308-09 (Ala. 1990)(stating that "[w]e are not prepared to hold that a plaintiff's own repetition of allegedly defamatory statements can supply the element of publication essential in a [defamation] action"). Therefore, summary judgment is due to be granted in favor of Defendants as to McKinley's defamation claim based on alleged statements that Williams made to Eugene Randolph.

C.   *Tortious Interference with Employment*

In his Amended Complaint, McKinley alleges that PetSmart has caused him "continued unemployment" as a result of the allegations that he stole merchandise from the store. Specifically, McKinley claims that PetSmart has disclosed the allegations to prospective employers and that those disclosures have resulted in his continued unemployment. In his Response to Defendant's Motion for Summary Judgment, there is no mention of the tortious interference with employment claim. Therefore, the Court assumes that he has abandoned this claim as well and finds that summary judgment is due to be granted in favor of Defendants on the tortious interference claim. Even if McKinley has not abandoned the claim, however, the Court finds that summary judgment is due to be granted in favor of the Defendants because McKinley presented no evidence that PetSmart actually communicated with any prospective employers.

## VI. Conclusion

For the reasons set forth above, it is hereby ORDERED that Defendants' Motion for Summary Judgment (Doc. # 36) is GRANTED.

DONE this the 29th day of June, 2006.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE